SRD: USAO2021R00112

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. MJM 24cr298 |
| v. | : | |
| | : | **Count One**: 18 U.S.C. § 1343 |
| MELVIN THOMPSON, | : | (Wire Fraud) |
| | : | |
| Defendant. | : | |
| | : | **Count Two**: 26 U.S.C. § 7206(1) |
| | : | (Willfully Making and Subscribing |
| | : | a False Tax Return) |
| | : | |

…oooOooo…

**INFORMATION**

**COUNT ONE**
**18 U.S.C. § 1343 – Wire Fraud**

The United States Attorney for the District of Maryland charges, at all times relevant to this Information:

**INTRODUCTION**

1. Defendant **MELVIN THOMPSON** ("the Defendant") was a resident of Chestertown, Maryland who worked for a cleaning business run by his parents from 2011 to 2019.

2. The Internal Revenue Service ("IRS") was an agency within the United States Department of the Treasury responsible for administering and enforcing federal revenue laws and regulations regarding the ascertainment, computation, assessment, and collection of taxes owed to the United States by its citizens and residents.

1

SRD: USAO2021R00112

## The CARES Act

3.       The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law signed on March 27, 2020 that was designed to provide emergency financial assistance to the millions of Americans suffering from the economic consequences of COVID-19.

4.       The CARES Act authorized up to $659 billion in forgivable loans to small businesses for employee retention and certain business expenses through a program called the Paycheck Protection Program ("PPP"). The program authorized qualifying small businesses and other organizations to receive loans 100 percent guaranteed by the Small Business Administration ("SBA"), and the full principal amount of the loans may qualify for loan forgiveness. The business must use PPP loan proceeds on payroll costs, mortgage interest, rent, and utilities. The SBA administered the program and had authority over all PPP loans. However, approved lenders (usually private banks and credit unions) issued the loans. WebBank, member FDIC, was one such lender. The lenders received and processed PPP applications and supporting documentation, then made the loans using their own funds.

5.       An Economic Injury Disaster Loan ("EIDL") was an SBA-administered loan designed to provide assistance to small businesses that suffer substantial economic injury as a result of a declared disaster. An EIDL helped businesses meet necessary financial obligations that could have been met had the disaster not occurred. It provided relief from economic injury that the disaster caused and permits businesses to maintain a reasonable working capital position during the period that the disaster affected. Additionally, the SBA offered an EIDL advance that was designed to provide emergency economic relief to businesses that experienced a temporary loss of revenue that would not have to be repaid. EIDL funds were issued directly from the

2

SRD: USAO2021R00112

United States Treasury and applicants apply through the SBA via an online portal.

## THE SCHEME TO DEFRAUD AND THE CHARGE

6.  Beginning in or about March 2020 and continuing until in or about February 22, 2021, in the District of Maryland, the Defendant,

**MELVIN THOMPSON,**

did knowingly execute a scheme to defraud the United States Small Business Administration and WebBank to obtain money and property by submitting fraudulent EIDL and PPP loans.

7.  On or about June 18, 2020, for the purpose of executing and attempting to execute such scheme to defraud, **THOMPSON** did knowingly transmit and cause to be transmitted, in interstate commerce, from Maryland to a place outside Maryland, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## MANNER AND MEANS

### Low Price Headquarters

8.  It was part of the scheme to defraud that, on or about February 24, 2020, the Defendant filed a 2019 U.S. Individual Income Tax Return, Form 1040. This return reported that Thompson made $27,750 in wages for his cleaning work, of which $2,676 had been withheld to pay taxes. The return also included an attached Schedule C for an alleged online retail business called Low Price Headquarters on which the Defendant reported a loss of $71,105, despite the fact that the Defendant conducted no business for Low Price Headquarters and had allowed the trade name to lapse in or about February 2018. The return further reported the Defendant made zero dollars of taxable income and a requested refund to the Defendant of $2,676. The Defendant did not report any other sources of income for 2019.

9.  It was further part of the scheme to defraud that, on or about March 31, 2020, the

SRD: USAO2021R00112

Defendant electronically submitted an application for an EIDL in the name of Low Price Headquarters. On that application, the Defendant falsely reported Gross Revenues of $869,985 and Cost of Goods Sold of $842,281 for the 12 months prior to January 31, 2020. Based on the Defendant's false statements, the business was eligible for a loan of $11,900, and an advance of $2,000.

10. It was further part of the scheme to defraud that, on or about April 30, 2020, the Defendant electronically submitted an application for a PPP loan in the name of Low Price Headquarters. On that application, the Defendant falsely listed the business's average monthly payroll as $7,259. The application contained what purported to be an IRS Schedule C, Profit or Loss From Business in the name of Low Price Headquarters. This Schedule C did not match the Schedule C that the Defendant had previously filed with the IRS for the entity and was not itself filed with the IRS at any point in time. It reported gross receipts of $675,881 and net profit of $87,113. The Defendant's false Low Price Headquarters PPP loan application was approved on or about May 1, 2020. On or about May 1, 2020, a payment in the amount of $18,147 was deposited to the Defendant's Huntington National Bank (HNB) account ending 6446.

11. It was further part of the scheme to defraud that, on or about May 24, 2020, the Defendant's false Low Price Headquarters EIDL loan application was approved and, on or about May 28, 2020, a deposit in the amount of $11,900 was made to the Defendant's HNB account ending 3891 (HNB 3891).

**Omicron Electronics**

12. It was further part of the scheme to defraud that, on or about March 31, 2020, the Defendant applied for an EIDL for Omicron Electronics. On the application, the Defendant listed gross revenue for the business of $1,172,113. He also listed a cost of goods sold of $1,348,867,

SRD: USAO2021R00112

which represented a loss of $176,754 for the 12 months prior to January 31, 2020.

13. It was further part of the scheme to defraud that on or about May 18, 2020, the Defendant received an email from the SBA with an attached letter that informed him the EIDL for Omicron Electronics had been declined by the SBA because an economic injury was not substantiated. The letter read in part, "Please review the information you submitted in your application to make sure you provided us with the Gross Sales and Cost of Goods Sold (if applicable) in the last 12 months or what was reported on your most recent Federal income tax returns." The letter then provided instructions on how to request reconsideration.

14. It was further part of the scheme to defraud that, on or about May 28, 2020 at approximately 12:22 AM, Thompson filed a false IRS Form 1120, 2019 U.S. Corporation Income Tax Return for Omicron Electronics listing gross receipts for the business of $1,228,492, a gross profit of $195,472, and a salary to the Defendant of $96,000. Approximately 17 minutes after this return was accepted by the IRS, the Defendant sent an email to the SBA in which he sought reconsideration of the SBA's declination of the Omicron Electronics EIDL application. The Defendant wrote, in relevant part: "I believe there was an error with the revenue and cost of goods sold section. The correct amount should be 1,228,492 in revenue and 994,904 for cost of goods sold. I have attached the 2019 tax return for the business to substantiate this correction. Thank you for your time and I hope this resolves the declination of the application." The Defendant attached a copy of the false 2019 Omicron Electronics tax return. On or about June 15, 2020, the EIDL loan was approved and a deposit in the amount of $96,700 was made to the Omicron Electronics NBKC account ending 5107 on or about June 18, 2020.

**Omicron Corporation**

15. It was further part of the scheme to defraud that, on or about March 31, 2020, the Defendant applied for an EIDL in the name of Omicron Corporation, a company he incorporated

SRD: USAO2021R00112

on or about February 11, 2016, and forfeited on or about October 16, 2018. On the EIDL application, the Defendant listed gross revenue of $771,213 and cost of goods sold of $917,710, which represented a loss of $146,497 for the 12 months prior to January 31, 2020. On or about May 18, 2020, the Defendant received an email from the SBA with an attached declination letter that was nearly identical to that sent to him the same day regarding the declination of the Omicron Electronics EIDL.

16. It was further part of the scheme to defraud that, on or about on May 19, 2020, the Defendant electronically submitted an application for a PPP loan in the name of Omicron Corporation. The application falsely listed the business's average monthly payroll as $7,704. The application contained a false IRS Schedule C, Profit or Loss From Business in the name of Omicron Corporation that had not been filed with the IRS. The Schedule C reported gross receipts of $622,971 and net profit of $92,458. The Defendant's false Omicron Corporation PPP loan application was approved on or about May 19, 2020. On or about May 20, 2020, a payment in the amount of $19,260 was deposited to the Defendant's HNB 3891 account. That same day, the Defendant filed articles of revival for Omicron Corporation.

17. It was further part of the scheme to defraud that, on or about July 31, 2020, the Defendant filed with the IRS a false 2019 U.S. Income Tax Return for an S Corporation for Omicron Corporation. The tax return reported gross receipts of $935,882, gross profit of $236,919, and a net loss of $2,570.

18. It was further part of the scheme to defraud that, on or about July, 31, 2020, the Defendant reapplied for an EIDL in the name of Omicron Corporation through SBA's online portal. On this application, the Defendant reported the same gross revenue of $935,882 that he had listed on the false 2019 tax return, but further reported a gross profit of $113,721 for the 12 months prior to January 31, 2020. This gross profit also differed from the loss of $146,497 that

SRD: USAO2021R00112

the Defendant reported for the same period on the March 31, 2020 Omicron Corporation EIDL application. The second Omicron Corporation EIDL application was approved on or about August 7, 2020, and on or about August 11, 2020, a payment in the amount of $56,800 was deposited to Radius Bank account ending 6779 held in the name of Omicron Corporation.

**Omicron Treasures**

19. It was further part of the scheme to defraud that, on or about April 1, 2020, the Defendant applied for an EIDL for a fictitious entity he called Omicron Treasures. In the EIDL application, the Defendant falsely reported Gross Revenues of $1,967,113 and Cost of Goods Sold of $1,837,112 for the 12 months prior to January 31, 2020. However, at the time he made these representations, there was no such business as Omicron Treasures.

20. It was further part of the scheme to defraud that, on or about April 16, 2020, the Defendant filed Articles of Incorporation for Omicron Treasures Corporation listing a business start date of February 2020.

21. It was further part of the scheme to defraud that, on or about April 29, 2020, the Defendant opened a Radius Bank account ending 7806 (RAD 7806) in the name of Omicron Treasures and falsely listed February 2016 as the date the business was established.

22. It was further part of the scheme to defraud that, on or about May 21, 2020, the Defendant filed a PPP application for Omicron Treasures that falsely listed the business's average monthly payroll as $8,333. The same day, this application was approved and a payment of $20,832 was made to the Omicron Treasures RAD 7806 account. The application contained a false 2019 IRS Schedule C, Profit or Loss From Business in the name of Omicron Treasures that had not been filed with the IRS. The Schedule C reported gross receipts of $992,681 and net profit of $151,182.

23. It was further part of the scheme to defraud that, on or about May 29, 2020, in

SRD: USAO2021R00112

response to a request from an SBA contract employee for proof of Omicron Treasure's start date, the Defendant wrote, "The business was started in 2019, not 2018 and I have attached the 2019 tax return to this email to support that." Attached to the email was a copy of a 2019 Omicron Treasures U.S. Corporation Income Tax Return (Form 1120) that reflected an incorporation date of February 28, 2019 and that the Defendant had filed with the IRS seven minutes earlier. That same day, the SBA contract employee wrote back to the Defendant and requested the exact business start date to which the Defendant replied, "The start date is 02/28/2019." That same day, the EIDL application in the name of Omicron Treasures was approved and on or about June 2, 2020, a payment in the amount of $55,000 was deposited to Omicron Treasures RAD 7806 account.

24. It was further part of the scheme to defraud that the Defendant filed a false 2019 Omicron Treasures Form 1120 with the IRS that reported the business received gross receipts of $1,967,113, and reported that the business paid the Defendant $35,000 during 2019. These numbers differed from those contained on the 2019 Form Schedule C submitted with the Omicron Treasures PPP application.

25. It was further part of the scheme to defraud that, on or about June 2, 2020, the Defendant opened a Radius Bank account ending 4240 (RAD 4240), also in the name of Omicron Treasures, and listed February 2020 as the date the business was established. The Defendant falsely stated in bank documents that Omicron Treasures sold products for the home through the website www.omicrontrs.com, which was an inoperable website.

**AMT**

26. It was further part of the scheme to defraud that, on or about April 6, 2020, the Defendant applied for an EIDL in the name of AMT, a company for which the Defendant had obtained an EIN in August 2018 but had conducted no business. In the application, the

SRD: USAO2021R00112

Defendant falsely reported Gross Revenues of $1,227,331 and Cost of Goods Sold of $824,118 for the 12 months prior to January 31, 2020.

27.  It was further part of the scheme to defraud that, on or about May 8, 2020, the Defendant filed a PPP application in the name of AMT. The application contained a false and unfiled 2019 IRS Schedule C, Profit or Loss From Business in the name of AMT. The Schedule C reported gross receipts of $1,188,791 and net profit of $194,115. The application for a PPP loan for AMT was approved on or about May 8, 2020, and on or about May 12, 2020, a payment in the amount of $20,832 was made to the Defendant's HNB 3891 account.

28.  It was further part of the scheme to defraud that, on May 26, 2020, the Defendant filed Articles of Organization with the Maryland SDAT for AMT, LLC.

29.  It was further part of the scheme to defraud that, on or about May 28, 2020, the Defendant opened a Radius Bank account ending 0545 (RAD 0545) in the name of AMT. the Defendant informed the bank that AMT was in the business of selling video games, consoles, and movies through the website www.amtlimited.com.

30.  It was further part of the scheme to defraud that, on or about June 5, 2020, in response to a question from an SBA employee seeking clarification regarding AMT's date of formation and AMT's 2019 tax filings, the Defendant emailed a copy of an unfiled fraudulent Schedule C for AMT and stated "The actual start of business is around 01/25/2019. Maryland did not require me to incorporate for the start of business." This Schedule C showed gross receipts of $1,188,791, and a profit of $194,115. On or about June 12, 2020, the SBA approved the EIDL application in the name of AMT. On or about June 16, 2020, the SBA electronically deposited $149,900 into AMT's RAD 0545 account.

SRD: USAO2021R00112

**Thompson's Refurbished Outlet**

31.     It was further part of the scheme to defraud that, on or about July 30, 2020, the Defendant filed an EIDL application for an entity named Thompson's Refurbished Outlet, a fictitious business that conducted no business. This EIDL application falsely listed Gross Revenues of $681,443 and Cost of Goods Sold of $287,161 for the 12 months prior to January 31, 2020 and identified the business's start date as May 1, 2014. The Defendant provided an unfiled 2019 IRS Schedule C in the name of Thompson's Refurbished Outlet that listed gross receipts of $681,443 and a profit of $80,968. On or about August 9, 2020, the SBA approved the EIDL application in the name of Thompson's Refurbished Outlet and on August 12, 2020, the SBA electronically deposited $149,900 into the Defendant's TD Ameritrade account ending 5408 (TDA 5408).

**Epsilon Warehouse**

32.     It was further part of the scheme to defraud that, on or about October 21, 2020, the Defendant opened Radius Bank account ending in 2646 (RAD 2646) in the name of Epsilon Warehouse. The Defendant described the business as "Wholesale items mostly to businesses" and provided a website of www.epsilonw.com, which was non-operational.

33.     It was further part of the scheme to defraud that, on or around November 3, 2020, the Defendant filed a false 2019 U.S. Corporation Income Tax Return (Form 1120) for Epsilon Warehouse. The return stated an incorporation date of April 11, 2012, and gross receipts of $1,866,391.

34.     It was further part of the scheme to defraud that, on November 4, 2020, the Defendant filed an EIDL application in the name of Epsilon Warehouse. The application falsely reported Gross Revenues of $1,866,391 and Cost of Goods Sold of $1,561,811 for the 12 months prior to January 31, 2020.

SRD: USAO2021R00112

35. It was further part of the scheme to defraud that, on or about November 7, 2020, in response to an email from the SBA informing the Defendant that the application was declined because it contained "unverifiable information," the Defendant sent an email to the SBA seeking reconsideration of the application and attached a copy of the false 2019 Epsilon Warehouse tax return that the Defendant filed with the IRS on November 3, 2020. The EIDL application in the name of Epsilon Warehouse was approved on or about January 10, 2021, and on or about January 11, 2020, the SBA electronically deposited $149,900 to RAD 2646.

36. It was further part of the scheme to defraud that, on January 31, 2021, the Defendant filed an application for a PPP loan in the name of Epsilon Warehouse. The request was approved on or about February 20, 2021, and on or about February 22, 2021, a payment in the name amount of $20,833 was made to RAD 2646.

37. It was further part of the scheme to defraud that, in total, the Defendant applied for and obtained at least twelve COVID-19 related small business relief loans and associated payments during 2020 and 2021 through various entities with the proceeds totaling $791,004. Five loans, with proceeds totaling $99,904, were through the PPP and seven loans, with proceeds and advances totaling $691,100, were EIDLs. In conjunction with Thompson's actions to fraudulently obtain EIDL monies, a total of $21,000 of the amount he received were 'Advance Payments' related to certain loans. The Defendant primarily used the small business relief loan proceeds to engage in high frequency trading of options contracts and other securities, mainly at TD Ameritrade, where during 2020 alone he purchased and sold more than $12 million in securities. Through this high frequency trading, Mr. Thompson lost all the $791,004 gained through this scheme, with the exception of money spent to purchase a 2020 Lincoln Navigator. 18 U.S.C. § 1343.

SRD: USAO2021R00112

## COUNT TWO
### 26 U.S.C. § 7206(1) – Willfully Making and Subscribing a False Tax Return

The United States Attorney for the District of Maryland further charges:

1. The allegations contained in Paragraphs 1 through 5 and 8 through 37 of Count One are realleged and incorporated as if fully set forth in this paragraph.

2. On or about May 28, 2020, in the District of Maryland and elsewhere, the Defendant,

**MELVIN THOMPSON,**

willfully made and subscribed, and filed and caused to be filed with the IRS, a false IRS Form 1120, U.S. Corporation Income Tax Return for Omicron Electronics for the calendar year 2019, which was verified by a written declaration that it was made under the penalties of perjury and which **THOMPSON** did not believe to be true and correct as to every material matter; specifically, that the tax return reported on Line 1a gross receipts or sales of $1,228,492, on Line 3 a gross profit of $195,472, and on Line 13 a salary to **THOMPSON** of $96,000 on Line 74, whereas, as **THOMPSON** knew, these statements were not true.

26 U.S.C. § 7206(1).

SRD: USAO2021R00112

# FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further charges:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on any of the offenses charged in Count One of the Information.

2. Upon conviction of the offense set forth in Count One, the defendant,

**MELVIN THOMPSON,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting or derived from, proceeds obtained directly or indirectly as a result of the offense.

3. The property to be forfeited includes, but is not limited to, the following:

   a. a money judgment representing the proceeds he obtained as a result of his convictions.

   b. 2020 Lincoln Navigator with a Vehicle Identification Number (VIN): 5LMJJ3LT5LEL07902.

## Substitute Assets

4. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred, sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty,

SRD: USAO2021R00112

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. § 982
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: _____

SEAN DELANEY
Digitally signed by SEAN DELANEY
Date: 2024.10.10 15:02:09 -04'00'

EREK L. BARRON
United States Attorney
District of Maryland